**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Commodity Futures Trading Commission, )<br><br>Plaintiff, )<br><br>v. )<br><br>ROYAL METALS GROUP, LLC and )<br>CHELSEA GLESS, )<br><br>Defendant. ) | Case No. 18 CIV 8407<br><br>ECF Case |

## [PROPOSED] FINAL JUDGMENT BY DEFAULT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES, AND OTHER STATUTORY AND EQUITABLE RELIEF

This matter is before the Court upon Plaintiff Commodity Futures Trading Commission's ("Commission" or "Plaintiff" or "CFTC") Motion for Default Judgment, Permanent Injunction, Civil Monetary Penalties and Other Statutory and Equitable Relief ("Motion") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure ("Fed. R.Civ. P.") and Rule 55.2(b) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules").

On September 14, 2018, the Commission filed a Complaint charging Defendants Royal Metals Group, LLC (RMG") and Chelsea Gless ("Gless") (collectively, "Defendants") with violating Section 6(c)(1) of the Commodity Exchange Act ("Act"), 7 U.S.C. § 9(1) (2012), and Commission Regulation ("Regulation") 180.1(a), 17 C.F.R. § 180.1(a) (2018) (the "Complaint" or "Compl.") (ECF No. 1).

On October 27, 2018, the summons and Complaint were properly served on RMG in Iowa, pursuant to Fed. R. Civ. P. 4(h)(1)(A), by personal delivery to RMG's registered agent, John T. Clark and proof of such service of RMG was filed on November 29, 2018.[1]  (ECF No. 19).

On October 27, 2018, the summons and Complaint were properly served on Gless pursuant to Fed. R. Civ. P. 4(e)(2)(A) by personal delivery to Gless and proof of such service of Gless was filed on November 29, 2018. (ECF No. 20).

Defendants have failed to appear, answer or otherwise move with respect to the Complaint within the time permitted by Fed. R. Civ. P. 12(a)(1) and RMG has never appeared by attorney representative and the Clerk of Court entered defaults against Defendants on November 30, 2018.  (ECF Nos. 27 - 28).

The Commission has moved this Court to grant final judgment by default against Defendants, order permanent injunctive relief, and impose restitution and civil monetary penalty.

The Court has carefully considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Commission's memorandum in support of its Motion, the record in this case including the Commission's declarations and exhibits, and the Court being otherwise advised in the premises, pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rule 55.2(b), it is hereby:

**ORDERED AND ADJUDGED** that the Plaintiff's Motion against Defendants is **GRANTED.**  Accordingly, the Court enters findings of fact, conclusions of law, and an Order of Final Judgment by Default for Permanent Injunction, Civil Monetary Penalties, and Other

---

[1] Iowa Code § 489.116 (2010) states that  a "limited liability company's or foreign limited liability company's registered agent is the company's agent for service of process, notice, or demand required or permitted by law to be served on the company."

Statutory and Equitable Relief ("Order") pursuant to Sections 6c and 6d of the Act, 7 U.S.C. §

13a-1 (2012), as set forth herein.

## I.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.   Findings of Fact

**The Parties**

1. Plaintiff Commodity Futures Trading Commission is an independent federal
regulatory agency that is charged by Congress with administering and enforcing the Act,
7 U.S.C. §§ 1–26 (2012), and the Regulations promulgated thereunder, 17 C.F.R. pts. 1–190
(2018).  (Compl. ¶ 13).

2. Defendant RMG is an Iowa limited liability company ("LLC"), which was registered
as an LLC in 2009 with its last known place of business in Iowa.  RMG has never been
registered with the Commission in any capacity.  (Compl. ¶ 14).

3. Defendant Gless is a member, manager and part owner of RMG. Gless's last known
address is in Iowa. She has never been registered with the Commission in any capacity.
(Compl. ¶ 15).

**Background**

4. RMG, a purported precious metals dealer, offered clients and/or financial advisors
acting on behalf of clients ("Clients") the opportunity to purchase precious metals and/or to sell
their precious metals to RMG for an agreed upon price.  (Compl. ¶ 16).

5. RMG maintained a website, royalmetalsgroup.com ("RMG Website"), which stated
that RMG bought and sold physical gold and silver.  The RMG Website informed Clients that
the "coin/bullion we offer for sale are commodities traded on various markets, and that the
market price and availability of such types of coin/bullion change constantly with supply and

demand.  We set the coin/bullion sale price for all coin/bullion that we offer for sale."  (Compl. ¶ 17).

6.  In order to induce Clients to invest with RMG, the RMG Website touted and misrepresented RMG as "the industry Gold standard for compliant precious metal purchases. Buying precious metals from other online dealers that do not employ our patent-pending distribution model may put your purchase of physical precious metals at risk."  It also touted to provide a "safe and secure online environment to make precious metal investments that benefit our Clients."  (Compl. ¶ 18).

7.  RMG's Website also offered Clients the opportunity to contact RMG's "1600+ contracted registered advisors in over 30 states" to assist Clients in the purchase or sale of precious metals with RMG.  The RMG Website requested that anyone who wants to become a RMG Advisor should call RMG.  (Compl. ¶ 19).

8.  RMG's Website further stated that RMG "was formed by Trusted Financial Advisors and insurance agents who were driven to meet their client's need for a stable portfolio in these turbulent economic times.  Royal Metals Group assists agents and clients through every step of the investment and acquisition process.  We have dedicated ourselves to this mission." The RMG Website also stated that "we believe that precious metals should be a part of every client's portfolio.  We believe that as much as 20% to 40% of every client's portfolio should be in hard assets to provide protection from market loss, inflation, and a fluctuating currency . . . ." (Compl. ¶ 20).

9.  On October 20, 2009, RMG filed its Certificate of Organization in the State of Iowa. (Compl. ¶ 21).

4

10.  In order to perpetrate this scheme, RMG maintained bank accounts in at least three separate financial institutions in the name of RMG ("RMG Bank Accounts").  One of the RMG Bank Accounts was located and maintained in New York County and Clients were directed to and did wire their funds into this New York RMG Bank Account.  Gless had signatory authority on all of the RMG Bank Accounts.  (Compl. ¶ 22).

11.  Documents signed by Gless which have been filed with one of the RMG Bank Accounts list Gless as a member and manager of RMG and having a 45% ownership interest in RMG.  (Compl. ¶ 23).

**Defendants' Fraudulent Scheme in Violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)**

Summary of Scheme

12.  From at least March 2016 to present (the "Relevant Period"), Defendants defrauded Clients in connection with precious metals transactions.  Defendants defrauded at least eight Clients and fraudulently obtained more than $617,000 from these Clients and these Clients suffered losses totaling $584,549.84 .  (Compl. ¶  1; Declaration of Alben Weinstein, Exhibit 1).

13.  Defendants and/or agents acting on behalf of Defendants ("Defendants' Agents") communicated with Clients and represented to Clients that RMG would sell and deliver precious metals to Clients and/or purchase precious metals from Clients for an agreed upon price. Defendants knew these representations to Clients were false and/or made them with reckless disregard for their truth, and instead of delivering the precious metals and/or paying Clients as represented, Defendants misappropriated their Clients' funds and metals.  (Compl. ¶ 2).

5

14. During the Relevant Period, Defendants fraudulently obtained funds from at least four of these eight Clients after Defendants and/or Defendants' Agents represented to these Clients that they will deliver precious metals in return for their funds. Defendants failed to deliver all of the precious metals as represented and instead only made a small delivery of coins and returned a small portion of their funds causing these four Clients to suffer losses in excess of $402,000. (Compl. ¶ 3).

15. During the Relevant Period, Defendants also fraudulently obtained precious metals, including gold and silver, from at least four of these eight Clients after Defendants and/or Defendants' Agents represented to these Clients that they would be paid in full for their precious metals. Defendants instead kept the Clients' precious metals and only returned a small amount of funds to one of these Clients causing these four Clients to suffer losses in excess of $181,000. (Compl. ¶ 4).

16. In order to perpetuate and/or conceal this scheme, Defendants made false representations to Clients regarding invalid delivery tracking numbers for their precious metals and/or funds and provided Clients with unsigned checks and checks that could not be cashed due to stop payment orders and/or insufficient funds. (Compl. ¶ 5).

Mechanics of Scheme

17. Defendants and/or Defendants' Agents communicated directly with Clients who purchased precious metals from or sold precious metals to RMG and represented to Clients that the precious metals they purchased from RMG would be delivered upon receipt of an agreed upon price. Defendants and/or Defendants' Agents also represented to Clients that RMG would pay them a specific amount of cash for the precious metals those Clients sold to RMG.

Defendants knew these representations to Clients were false and/or made them with reckless disregard for their truth. (Compl. ¶ 24).

18.  Instead of delivering precious metals and paying Clients as represented, Defendants misappropriated both Clients' funds and their precious metals.  Clients' funds deposited into the RMG Bank Accounts were used by Defendants for their own purposes including, in part, the payment of airline fees, purchases at Walmart and transfers to accounts controlled by Gless and other third parties.  (Compl. ¶ 25).

19.  In order to perpetuate and/or conceal this scheme, Defendants willfully made representations in writing, by mail and email, and by phone to Clients about the delivery of their funds and/or precious metals which were false.  Defendants knew these representations were false and/or made them with reckless disregard for their truth.  (Compl. ¶ 26).

20.  Defendants and/or Defendants' Agents provided Clients with account and routing numbers for the RMG Bank Accounts in order to ensure Clients' funds were properly deposited into these accounts and Clients did in fact deposit their funds into the RMG Bank Accounts. (Compl. ¶ 27).

### Examples of Defendants' False and Misleading Representations, Misappropriation of Client Funds and Concealment of Scheme

21.  In July 2017, Client #1 used almost all of the funds from her retirement savings to purchase more than 180 one ounce gold coins from RMG with each coin valued at approximately $1,400.  Client #1 deposited $259,800 into one of the RMG Bank Accounts after Defendants and/or Defendants' Agents represented that RMG would deliver gold coins valued at the agreed upon purchase price.  Defendants knew this representation to Client #1 was false or made it with reckless disregard for its truth.  After Client #1 learned that RMG failed to deliver all of the gold coins as represented, Client #1's daughter communicated directly with

Gless. Gless falsely represented to Client #1's daughter that there was a problem with the wholesaler who was supposed to deliver the gold coins. When Client #1's daughter repeatedly demanded that Gless provide her with the name of a contact at the purported wholesaler, Gless failed to do so. To date, RMG delivered only one gold coin valued at approximately $1,400. (Compl. ¶ 28).

22.   In September 2017, Client #2 deposited over $55,000 into one of the RMG Bank Accounts after Defendants and/or Defendants' Agents represented that RMG would deliver gold and silver coins and gold bars valued at the agreed upon purchase price.  Defendants knew this representation to Client #2 was false or made it with reckless disregard for its truth.  In September 2017, RMG delivered only 100 silver coins valued at approximately $1,900.  After RMG failed to deliver any remaining coins or bars, Client #2 communicated with Gless via email and by phone during October, November and December 2017 as well as again in January 2018, demanding the return of his funds.  During this time period, Gless continuously falsely assured Client #2 that all of his funds would be returned.  During November 2017, for example, Gless provided Client #2 with a delivery tracking number for a check that was never delivered as well as an invalid delivery tracking number.  Also during November and December of 2017, RMG sent an unsigned check and another check that Client #2 could not cash due to a stop payment order being placed on that check.  In December 2017, after Client #2's attorney contacted RMG, RMG only wired funds totaling $5,300 for the benefit of Client #2.  In January of 2018, Gless provided Client #2 with a tracking number for a cashier's check that was never delivered.   (Compl. ¶ 29).

23.   In September 2017, Client #3 deposited over $49,900 into one of the RMG Bank Accounts after Defendants and/or Defendants' Agents represented that RMG would deliver

gold and silver coins valued at the agreed upon purchase price. Defendants knew this representation to Client #3 was false or made it with reckless disregard for its truth. After RMG failed to deliver any gold and silver coins, Client #3 communicated with Gless and demanded the return of his funds. In response, Gless falsely represented that she would return his funds and provided Client #3 with invalid delivery tracking numbers and false information regarding the status of the return of his funds. RMG sent an unsigned check and another check that could not be cashed by Client #3 due to insufficient funds in that RMG Bank Account. In January 2018, Client #3 only received small payments from RMG totaling approximately $3,000. (Compl. ¶ 30).

24. In March 2016, Client #4 deposited over $49,600 into a RMG Bank Account after Defendants and/or Defendants' Agents represented that RMG would deliver gold and silver valued at the agreed upon purchase price. Defendants knew these representations to Client #4 were false and/or acted with reckless disregard for its truth. The gold and silver were not delivered as represented and no funds were returned to Client # 4. (Compl. ¶ 31).

25. In November of 2017, Client #5 delivered gold coins to RMG after Defendants and/or Defendant's Agents represented that Client #5 would receive approximately $90,000 for those coins. Defendants knew this representation to Client #5 was false or made it with reckless disregard for its truth. Gless provided Client #5 with shipping labels to deliver the gold coins. Client #5 shipped the coins to RMG and, as per the instructions of RMG, sent a form to RMG authorizing the transfer of funds from RMG to Client #5's bank account ("Transfer Form"). After RMG failed to send any funds after receipt of the coins, Client #5 contacted Gless. Gless falsely informed Client #5 that since Client #5 failed to send RMG the Transfer Form, no funds were sent to Client #5's account. RMG then sent an unsigned check and another check which

Client #5 could not cash due to a stop payment ordered placed on that check. In December 2017, Gless sent Client #5 an email with an attachment that Gless stated was a document she received from an RMG Bank showing that $88,625.16 was sent by wire from an RMG Bank Account to Client #5. Client #5 never received this wire and no precious metals were returned to Client #5. (Compl. ¶ 32).

26. In January 2018, Client #6 delivered gold and silver coins to RMG after Defendants and/or Defendants' Agents represented to Client #6 that she would receive over $18,800 for those metals. Defendants knew this representation to Client #6 was false or made it with reckless disregard for its truth. Gless sent Client #6 shipping labels for the precious metals and Client #6 used those labels to deliver the precious metals to RMG. Client #6 did not receive any funds from RMG nor did RMG return any of the precious metals to Client #6. (Compl. ¶ 33).

27. In June of 2017, Client #7 delivered eight boxes of silver coins to RMG after Defendants and/or Defendants' Agents represented that Client #7 would receive approximately $60,600 for those coins. Defendants knew this representation to Client #7 was false and/or acted with reckless disregard for its truth. Gless provided Client #7 with the shipping labels for the precious metals and Client #7 used those labels to deliver the silver coins to RMG. Gless represented to Client #7 that two boxes arrived damaged and empty and that she will file a claim with USPS for the loss ("USPS Loss Claim Form"). Client #7 demanded documentation from Gless for the purported USPS Loss Claim Form and Gless failed to provide Client #7 with any such documentation. RMG also sent a check in the amount of $42,524 that Client #7 was unable to cash due to insufficient funds in that RMG Bank Account. Only a small amount of

funds was received by Client #7 from RMG.  RMG did not return any of these silver coins and/or any other funds to Client #7.   (Compl. ¶ 34).

28.  In September 2017, Client #8 delivered 26 gold bars to RMG after Gless represented that Client #8 would receive $34,517.60 for those gold bars.  Defendants knew this representation to Client #8 was false and/or acted with reckless disregard for its truth.  Gless provided Client #8 with the shipping labels for the gold bars and Client #8 used those labels to deliver the gold bars to RMG.  RMG sent three checks, each in the amount of $34,517.60 and all dated October 23, 2017, which Client #8 could not cash due to: 1) the first check being drawn against an RMG Bank Account that did not have sufficient funds; 2) an RMG Bank's refusal to negotiate the second check; and 3) the third check being drawn against an RMG Bank Account that was closed.  RMG did not return any of the gold bars to Client #8.  (Compl. ¶ 35).

**Controlling Person Liability**

29.  During the Relevant Period, Gless was a member, manager and 45% owner of RMG.  (Compl. ¶ 36).

30.  During the Relevant Period, Gless controlled and was the signatory for the RMG Bank Accounts where Clients' funds were deposited for the purpose of purchasing and/or selling precious metals with RMG.  (Compl. ¶ 37).

31.  During the Relevant Period, Gless did not act in good faith or knowingly induced violations of the Act and Regulations, by making false representations to Clients, by misappropriating precious metals from Clients and by using the RMG Bank Accounts to fraudulently receive and misappropriate Clients' funds for her own purposes.  (Compl. ¶ 38).

### Gless And Others Acted as Agents for RMG

32.  During the Relevant Period, the acts and omissions of Gless and any other managers, employees, and agents of RMG in offering Clients the opportunity to purchase precious metals and/or to sell their precious metals to RMG for an agreed upon price  were committed within the scope of their employment, agency or office with RMG.  (Compl. ¶¶ 7, 16).

**B.**     **Conclusions of Law**

### Jurisdiction and Venue

33.  This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.  This Court also has jurisdiction over this case pursuant to 28 U.S.C. § 1331 (2012) (federal question) and 28 U.S.C. § 1345 (2012) (United States as Plaintiff).

34.  Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because the Defendants transact business in this jurisdiction and the acts and practices in violation of the Act and Regulations occurred, are occurring or are about to occur within this District, among

other places.  Here, in order to perpetrate this scheme, Clients were directed to and did wire

their funds into a New York RMG Bank Account which was located and maintained in New

York County and Gless had signatory authority over this and other RMG Bank Accounts.

(Compl. ¶ 22).

> **Defendants Committed Fraud in Connection with Contracts of Sale of Precious Metals, Commodities in Interstate Commerce, in Violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)**

35.  7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) make it unlawful for any person, in

connection with contracts of sale of any commodity in interstate commerce, including precious

metals, to intentionally or recklessly: (1) use or employ, or attempt to use or employ, any

manipulative device, scheme, or artifice to defraud; (2) make, or attempt to make, any untrue or

misleading statement of a material fact or to omit to state a material fact necessary in order to

make the statements made not untrue or misleading; or (3) engage, or attempt to engage, in any

act, practice, or course of business, which operates or would operate as a fraud or deceit upon

any person.  Precious Metals such as gold and silver are commodities sold in interstate

commerce subject to the Commission's anti-fraud authority under Section 6(c)(1)of the Act, 7

U.S.C. § 9(1)  and 17 C.F.R. § 180.1(a), Regulation 180.1(a).  *CFTC v. Hunter Wise*

*Commodities, LLC*, 1 F. Supp. 3d 1311, 1347-48 (S.D. Fl. 2014)  (referencing precedents under

Section 10(b) and Rule 10b-5 under the Securities Exchange Act to hold that fraud involving

gold and silver was actionable under Section 6(c)(1) and Regulation 180.1(a)); *CFTC v.*

*McDonnell*, 287 F. Supp. 3d 213, 227 (E.D.N.Y Mar. 6, 2018) (holding that the Commission

has anti-fraud authority under Section 6(c)(1) and Regulation 180.1(a) in connection with spot

transactions that do "not directly involving future trades."

36.  By the conduct described above and in the Complaint, Defendants and Defendants'

Agents, intentionally or recklessly, in connection with contracts of sale of commodities in

interstate commerce, namely precious metals involving gold and silver: (1) used or employed,

or attempted to use or employ, a manipulative device, scheme, or artifice to defraud; (2) made,

or attempted to make, untrue or misleading statements of a material fact or to omit to state a

material fact necessary in order to make the statements made not untrue or misleading; and (3)

engaged, or attempted to engage, in an act, practice, or course of business, which operates or

would operate as a fraud or deceit upon any person, in violation of 7 U.S.C. § 9(1)(a) and 17

C.F.R. § 180.1(a).

37. Defendants, as set forth in the Complaint, cheated and defrauded, and attempted to

cheat and defraud, Clients, in connection with contracts of sale of gold and silver, commodities

in interstate commerce. Defendants misrepresented that they would sell and deliver precious

metals to Clients and/or purchase precious metals from Clients for an agreed upon price

knowing that these representations to Clients were false and/or made them with reckless

disregard for their truth. Instead of delivering the precious metals and/or paying Clients as

represented, Defendants misappropriated their Clients' funds and metals. In order to perpetuate

and/or conceal this scheme, Defendants made false representations to Clients regarding invalid

delivery tracking numbers for their precious metals and/or funds and provided Clients with

unsigned checks and checks that could not be cashed due to stop payment orders and/or

insufficient funds.

38. Gless, directly or indirectly, did not act in good faith or knowingly induced, directly or

indirectly, RMG's act or acts in violation of the Act and/or Regulations; therefore, pursuant to Section

13(b) of the Act, 7 U.S.C. § 13c(b) (2012), Gless is liable for RMG's violations of 7 U.S.C.

§ 9(1)(a) and 17 C.F.R. § 180.1(a).

39.     The foregoing acts, omissions, and failures of Gless and Defendants' Agents occurred within the scope of their employment, office, or agency with RMG; therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2018), RMG is liable for Gless' and Defendants' Agents acts, omissions, and failures in violation of 7 U.S.C. § 9(1)(a) and 17 C.F.R. § 180.1(a).

40.  Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## II.     PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

41.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), Defendants are permanently restrained, enjoined and prohibited from directly or indirectly:

> A.  using or employing, or attempting to use or employ, any manipulative device, scheme, or artifice to defraud;
>
> B.  making, or attempting to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; and
>
> C.  engaging, or attempting to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person;

in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and/or Commission Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2018).

42.  Defendants are also permanently restrained, enjoined and prohibited from directly or indirectly:

15

A. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

B. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2018)), for their own personal account or for any account in which they have a direct or indirect interest;

C. Having any commodity interests traded on their behalf;

D. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

E. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

F. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2018); and/or

G. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2018)), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9).

## III.   RESTITUTION AND CIVIL MONETARY PENALTY

**A.   Restitution**

43.  Defendants shall pay, jointly and severally, restitution in the amount of Five Hundred Eighty Four Thousand Five Hundred Forty Nine Dollars and Eighty Four Cents

($584,549.84) ("Restitution Obligation") to Clients which represents Client funds and Client

precious metals received by Defendants less any Client funds and Client precious metals

returned to Defendants. If the Restitution Obligation is not paid immediately, post-judgment

interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order

and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this

Order pursuant to 28 U.S.C. § 1961 (2012).

44. For amounts disbursed to Clients as a result of satisfaction of the Restitution

Obligation of Defendant Gless in this matter, RMG shall receive a dollar-for-dollar credit

against its Restitution Obligation.

45. For amounts disbursed to Clients as a result of satisfaction of the Restitution

Obligation of Defendant RMG in this matter, Gless shall receive a dollar-for-dollar credit

against her Restitution Obligation.

46. To effect payment of the Restitution Obligation and the distribution of any

restitution payments to Defendants' Clients, the Court appoints the National Futures

Association ("NFA") as Monitor ("Monitor"). The Monitor shall receive restitution payments

from Defendants and make distributions as set forth below. Because the Monitor is acting as an

officer of this Court in performing these services, the NFA shall not be liable for any action or

inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

47. Defendants shall make Restitution Obligation payments, and any post-judgment

interest payments, under this Order to the Monitor in the name "RMG Restitution Fund" and

shall send such payments by electronic funds transfer, or by U.S. postal money order, certified

check, bank cashier's check, or bank money order, to the Office of Administration, National

Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under

cover letter that identifies the paying Defendants and the name and docket number of this

proceeding.  Defendants shall simultaneously transmit copies of the cover letter and the form of

payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three

Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

48.  The Monitor shall oversee the Restitution Obligation of Defendants and shall have

the discretion to determine the manner of distribution of such funds in an equitable fashion to

Defendants' Clients identified by the Commission or may defer distribution until such time as

the Monitor deems appropriate.  In the event that the amount of Restitution Obligation

payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the

administrative cost of making a distribution to eligible Clients is impractical, the Monitor may,

in its discretion, treat such restitution payments as civil monetary penalty payments, which the

Monitor shall forward to the Commission following the instructions for civil monetary penalty

payments set forth in Part B below.

49.  Defendants shall cooperate with the Monitor as appropriate to provide such

information as the Monitor deems necessary and appropriate to identify Defendants' Clients to

whom the Monitor, in its sole discretion, may determine to include in any plan for distribution

of any Restitution Obligation payments.  Defendants shall execute any documents necessary to

release funds that they have in any repository, bank, investment or other financial institution,

wherever located, in order to make partial or total payment toward the Restitution Obligation.

50.  The Monitor shall provide the Commission at the beginning of each calendar year

with a report detailing the disbursement of funds to Defendants' Clients during the previous

year.  The Monitor shall transmit this report under a cover letter that identifies the name and

18

docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

51.  The amounts payable to each Client shall not limit the ability of any Client from proving that a greater amount is owed from Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any Client that exist under state or common law.

52.  Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each Client of Defendants who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution that has not been paid by Defendants to ensure continued compliance with any provision of this Order and to hold Defendants in contempt for any violations of any provision of this Order.

53.  To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendants' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.    Civil Monetary Penalty**

54.  Defendants shall pay, jointly and severally, a civil monetary penalty in the amount of One Million Seven Hundred Fifty Three Thousand and Six Hundred and Forty Seven Dollars $1,753,647.00 ("CMP Obligation"),  which is equivalent to approximately triple the net monetary gain to Defendants of $584,549 from the violations—i.e., three times the amount of Client funds and/or value of precious metals obtained by Defendants from Clients that Defendants used for their own benefit or for the benefit of the fraud minus the funds returned by Gless and RMG to Clients and precious metals returned by Gless and RMG to Clients.  If the

19

CMP Obligation for each Defendant is not paid immediately, then post-judgment interest shall

accrue on the CMP Obligation for each Defendant beginning on the date of entry of this Order

and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this

Order pursuant to 28 U.S.C. § 1961 (2012).

55.  Defendants shall each pay their CMP Obligation and any post-judgment interest, by

electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or

bank money order.  If payment is to be made other than by electronic funds transfer, then the

payment shall be made payable to the Commodity Futures Trading Commission and sent to the

address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Defendants shall contact Marie Thorne or her

successor at the address above to receive payment instructions and shall fully comply with those

instructions.  Each Defendant shall accompany payment of their CMP Obligation with a cover

letter that identifies Defendant and the name and docket number of this proceeding.  Each

Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the

Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155

21st Street, NW, Washington, D.C. 20581.

**C.     Provisions Related to Monetary Sanctions**

56.  Partial Satisfaction:  Acceptance by the Commission/CFTC or the Monitor of any

partial payment of Defendants' Restitution Obligation or CMP Obligation shall not be deemed a

waiver of their obligation to make further payments pursuant to this Order, or a waiver of the

Commission/CFTC's right to seek to compel payment of any remaining balance.

### IV.     Miscellaneous Provisions

57.  Notice:  All notices required to be given by any provision in this Order shall be sent

certified mail, return receipt requested, as follows:

Notice to Commission:

> Manal M. Sultan
> Deputy Director
> Division of Enforcement
> Commodity Futures Trading Commission
> 140 Broadway, 19th Floor
> New York, NY 10005

Notice to NFA:

> Daniel Driscoll, Executive Vice President, COO
> National Futures Association
> 300 S. Riverside Plaza, Suite 1800
> Chicago, IL 60606-3447

All such notices to the Commission or the NFA shall reference the name and docket number of

this action.

58.  Change of Address/Phone:  Until such time as Defendants satisfy in full their

Restitution Obligation and each of their CMP Obligation as set forth in this Order, Defendants

shall provide written notice to the Commission by certified mail of any change to their

telephone number and mailing address within ten calendar days of the change.

59. Invalidation:  If any provision of this Order or if the application of any provision or circumstance is held invalid, then the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

60. Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Defendants to modify or for relief from the terms of this Order.

61. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon Defendants, upon any person under the authority or control of any of the Defendants, and upon any person who receives actual notice of this Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this Order for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalty, and Other Statutory and Equitable Relief Against Defendants Gless and RMG forthwith and without further notice.

**IT IS SO ORDERED** on this _24th_ day of ____January 2019_____,

UNITED STATES DISTRICT JUDGE

The Clerk of Court is directed to close this case and terminate Docket No. 29.

22